J-S23033-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: P.N.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: U.J-M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 835 EDA 2021 |

Appeal from the Order Entered January 19, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000311-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: P.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: U.J-M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 836 EDA 2021 |

Appeal from the Order Entered January 19, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000787-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: D.B.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: U.J-M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 837 EDA 2021 |

Appeal from the Order Entered January 19, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000312-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: D.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |

J-S23033-21

: 
: 
: 
APPEAL OF: U.J-M., MOTHER          : 
: 
: 
: 
: No. 838 EDA 2021

Appeal from the Order Entered January 19, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0000788-2018

BEFORE:   LAZARUS, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED SEPTEMBER 20, 2021**

U.J.-M. (Mother) appeals from the January 19, 2021 decrees involuntarily terminating her parental rights to her sons, P.N.M. a/k/a P.M., born in October of 2016, and D.B.M. a/k/a D.M., born in November of 2014 (collectively, the Children).  In addition, Mother appeals from the January 19, 2021 orders changing the Children's placement goals from reunification to adoption.[1]  Upon careful review, we affirm the decrees and orders.

On September 11, 2020, the Philadelphia Department of Human Services (DHS) filed involuntary termination petitions against Mother and Father pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b) and separate petitions to change the Children's goals to adoption.  A hearing occurred on

---

[*] Retired Senior Judge assigned to the Superior Court.
[1] In separate decrees also entered on January 19, 2021, the trial court involuntarily terminated the parental rights of C.M. (Father), but he did not appeal from the decrees.

- 2 -

the petitions on January 19, 2021,[2] during which the guardian *ad litem* (GAL), Mary Ann Galeota, Esquire, represented the Children's legal and best interests.

The parties and witnesses participated *via* telephone because of the Covid-19 pandemic. DHS presented the testimony of Gabriella Gonzalez, case manager for Community Umbrella Agency (CUA), Turning Points for Children. Mother appeared and was represented by counsel, but she did not present any evidence. Father testified on his own behalf.

At the conclusion of the testimonial evidence, the parties' counsel presented closing arguments in open court. The GAL supported the request of DHS to involuntarily terminate Mother's parental rights. N.T., 1/19/21, at 119-120. The GAL stated, in part:

> I also wish the [c]ourt to note that the . . . parental bond rests with [the foster mother.][3] I had a virtual visitation with the [C]hildren on January 18. It was clear to me that they're happy, they are thriving, and they referred to [foster mother] as mom.

*Id.* at 119. The trial court then provided its findings and conclusions of law in open court. *Id.* at 122-124.

---

[2] The hearing also included the permanency review for C.J., the older half-sister of the Children, whose permanency goal was permanent legal custody. N.T., 1/19/21, at 7-9. C.J. is not a subject of this appeal.

[3] The record reveals that the Children's foster mother is their maternal great-grandmother. N.T., 1/19/21, at 124.

The testimonial evidence revealed that the family initially became known to DHS when C.J., the Children's half-sister, witnessed Mother "having a mental health episode. She also disclosed inappropriate discipline and domestic violence in the home." N.T., 1/19/21, at 31. At a subsequent time, unspecified in the record, Father assumed sole custody of the Children. On May 23, 2018, while in Father's custody, the Children were adjudicated dependent, with supervision. *Id.* On August 21, 2018, the court removed the Children from Father's custody because he refused to comply with a court order to go to a housing shelter, and he did not comply with obtaining early intervention services for the Children. *Id.* at 32-33.

Single case plan (SCP) objectives were established for the Children's parents. We focus on Mother's objectives, which were related, in part, to her diagnosis of bipolar disorder, and her history of marijuana and phencyclidine addiction. *Id.* at 37. Mother's relevant SCP objectives were as follows: participate in mental health treatment, as recommended; complete random drug screens; refrain from physical violence; maintain stable housing, income, and employment; address domestic violence; and maintain weekly supervised visits with the Children. *Id.* at 35-36.

Ms. Gonzalez testified that Mother has obtained housing, but she has not completed any other SCP objective. *Id.* at 36-42. Mother had a psychiatric evaluation which resulted in the recommendation of medication treatment. *Id.* at 40. In addition, Mother had an ongoing addiction to

marijuana.  *Id.* at 37-38.  However, at the time of the hearing, Mother was not receiving mental health or drug and alcohol treatment.  *Id.* at 40.  Finally, Mother was inconsistent in 2020 with attending biweekly supervised visitation. *Id.* at 40, 42.  Mother's last visit with the Children was on October 14, 2020. *Id.*

By decrees dated and entered on January 19, 2021, the trial court involuntarily terminated Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).  On the same date, the trial court entered orders changing the Children's goals to adoption.

On March 4, 2021, Mother filed petitions for leave to file an appeal *nunc pro tunc*, which the court granted on March 11, 2021.  Mother filed notices of appeal and concise statements of errors complained of on appeal from the decrees and orders on April 25, 2021.[4]  This Court consolidated the appeals *sua sponte*.

Mother presents the following issues for review:

---

[4] Mother's appeals are untimely because she did not file them within thirty days of the date of the order granting her *nunc pro tunc* relief.  **See Commonwealth v. Wright**, 846 A.2d 730, 734 (Pa. Super. 2004) (stating, "When the trial court issues an order reinstating an appellant's appeal rights, the appellant must file the appeal within 30 days of the order reinstating the appeal rights.") (citing Pa.R.A.P. 903(a)).  However, we do not quash the appeals because the March 11, 2021 orders reinstating Mother's appeal rights failed to inform her that she had thirty days to file the appeals.  **See Wright**, 846 A.2d at 735 (concluding that, because the order "restoring [the a]ppellant's direct appeal rights did not inform [the a]ppellant that he had 30 days to file the appeal," we would not quash his appeal.) (citation omitted).

A.    Whether the trial court erred when it found that [DHS] by clear and convincing evidence had met its burden to terminate [Mother]'s parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8)[?]

B.    Whether the trial court erred when it found that [DHS] by [clear and convincing evidence] had met its burden in establishing that it would be in the best interest of the [C]hildren to change the goal to adoption pursuant to 23 Pa.C.S.A. § 2511(b)[?]

Mother's brief at 2.

Initially, we observe that, although Mother has appealed from the goal change orders, she does not raise an issue concerning them. The underlying petitions are governed by separate statutes. Petitions requesting a change in placement goal are governed by Section 6351 of the Juvenile Act, 42 Pa.C.S. § 6351. Petitions requesting the involuntary termination of parental rights are governed by Section 2511 of the Adoption Act, 23 Pa.C.S. § 2511. In her brief, Mother provides no legal argument regarding the goal change orders. As such, Mother has waived any issue regarding those orders. *See In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011) (stating that issues are waived if appellate brief fails to provide meaningful discussion with citation to relevant authority).

Our standard of review from the decrees involuntarily terminating Mother's parental rights is an abuse of discretion, which our Supreme Court has explained,

requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law

- 6 -

or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

This Court has stated that the termination of parental rights requires a bifurcated analysis, as follows.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted); *see also In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*) (stating that we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm).

We first address Mother's contention that the court abused its discretion in terminating her parental rights under Section 2511(a). Mother *only* provides legal argument with respect to Section 2511(a)(1). Therefore, Mother has waived any claim under Section 2511(a)(2), (5), and (8). *See In re W.H.*, 25 A.3d at 339 n.3.

Even if Mother did not waive her claims, we would conclude that termination under Section 2511(a)(5) and (8) was improper. Those subsections require, in part, that the child be removed from the care of the parent. The Children here were removed from the care of Father, not Mother. *See In re C.S.*, 761 A.2d 1197, 1200 (Pa. Super. 2000) (*en banc*) (stating that Section 2511(a)(5) and (8) did not provide a basis for terminating the father's parental rights when the child was never in his care, "and, therefore, could not be removed from his care.").

However, we would conclude that the trial court did not abuse its discretion under Section 2511(a)(2). This statutory provision provides, as follows.

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .

23 Pa.C.S. § 2511(a)(2).

This Court has explained that the moving party must produce clear and convincing evidence with respect to the following elements to terminate parental rights pursuant to Section **2511(a)(2)**: (1) repeated and continued

- 8 -

incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003).

Pursuant to Section 2511(a)(2), parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *In re A.L.D.* 797 A.2d 326, 340 (Pa. Super. 2002) (citation omitted). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id.* (citation omitted). Further, the grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *Id.* at 337 (citations omitted).

The record contains a parenting capacity evaluation (PCE) regarding Mother, dated November 15, 2019, and performed by Sheetal A. Duggal, Psy.D., which DHS introduced into evidence, and the court admitted. N.T., 1/19/21, at 28-30; DHS Exhibit 5. In the PCE, Dr. Duggal stated that Mother's historical diagnoses included major depression, bipolar disorder, phencyclidine

use, marijuana use, and borderline personality disorder. DHS Exhibit 5 at 18. Dr. Duggal stated that Mother demonstrated, in part, "current disordered thinking, the presence of possible delusions, impulsivity . . . and presents with symptoms of mania that appeared related to an Unspecified Bipolar and Related Disorder." *Id.* Finally, Dr. Duggal stated that Mother "also meets criteria for unspecified alcohol-related disorder; unspecified cannabis-related disorder; unspecified hallucinogen-related disorder. . . ." *Id.*

Mother reported to Dr. Duggal that she was then prescribed medication by a physician at "Caring Together," a dual diagnosis treatment program. DHS Exhibit 5 at 12. However, Dr. Duggal stated that there was no independent confirmation that Mother was participating in the program. *Id.* at 18. Dr. Duggal opined, "it is imperative that she remain engaged in [mental health and substance abuse] treatment. . . ." *Id.*

Ms. Gonzalez testified that Mother has never successfully completed either a mental health or a drug and alcohol program. N.T., 1/19/21, at 37. She confirmed that Mother had inconsistently attended the Caring Together program, and she was never informed that Mother made any progress in treatment goals. *Id.* at 23, 38-39. With respect to Mother's inconsistent attendance, Ms. Gonzalez explained on cross-examination by the GAL:

> Q. Is [Mother] still on the eligibility role at Caring Together or has she been discharged for noncompliance?
>
> A. [Mother] has not been discharged yet. So, [M]other would stop going, and then go for a week or two, and then stopped going

again. So, they don't discharge her because she does attend sometimes.

*Id.* at 76. Ms. Gonzalez testified, "[M]other today informed me that she has been attending the Wedge [program] . . . for two weeks." *Id.* at 38. However, Ms. Gonzalez testified that, prior to the hearing that same day, she called the Wedge "to verify . . . , and the Wedge stated that they do not have anybody by that name or with that birthdate." *Id.* In addition, Ms. Gonzalez did not have documentation verifying that Mother was attending the Wedge program. *Id.*

Ms. Gonzalez explained that the Caring Together program performed a psychiatric evaluation on Mother, the result of which recommended medication management for her mental health. *Id.* at 40. To her knowledge, Mother was not currently receiving any medication management. *Id.* at 39, 76-77.

Mother was last drug tested on September 1, 2020, through Caring Together, which was positive for marijuana. *Id.* at 17, 38. Ms. Gonzalez testified, "Mother admitted to me that she does have a problem with marijuana." *Id.* at 37-38. Further, Ms. Gonzalez observed an Instagram video of Mother providing "a tutorial on how to roll a blunt — a marijuana blunt." *Id.* at 93. Ms. Gonzalez testified that, to her knowledge, Mother was not engaged in drug and alcohol or mental health treatment. *Id.* at 40.

Ms. Gonzalez testified that Mother has participated in only three supervised community visits with the Children during 2020. *Id.* at 77. Those

visits occurred on March 10, October 7, and October 14, 2020. *Id.* at 40. Ms. Gonzalez testified that DHS made monthly contact with Mother for the purpose of scheduling her biweekly supervised community visits, but that it "is extremely complicated getting in contact with [Mother]. It's almost impossible when it comes from my phone number." *Id.* at 41-42. As such, the DHS case aide made the contact with Mother. *Id.* at 41. Nonetheless, Ms. Gonzalez testified that she did not know why Mother has not participated regularly in visits during 2020. *Id.*

Based on the foregoing, we conclude that ample evidence exists in the record to support the trial court's termination of Mother's parental rights pursuant to Section 2511(a)(2). Mother's repeated and continued incapacity, neglect, or refusal, since at least the date of the Children's adjudication in May of 2018, to consistently attend and demonstrate progress in mental health and drug and alcohol treatment, and to consistently attend supervised visitation, has caused the Children to be without essential parental care, control or subsistence necessary for their physical or mental well-being. In addition, the causes of Mother's incapacity, neglect, or refusal cannot or will not be remedied. Thus, even if Mother had not waived her claim under Section 2511(a)(2), we would not grant her relief. Mother's arguments under 2511(a)(1) are of no consequence as the court correctly held that DHS satisfied the requirements to terminate her rights under 2511(a)(2).

Because the trial court found that Mother's conduct warranted termination pursuant to Section 2511(a), it was required to analyze the Children's needs and welfare pursuant to Section 2511(b), in order to terminate Mother's parental rights. The statutory provision provides:

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of

environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).

This Court has stated, "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted). Further, the trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id.* (citation omitted). However, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa. Super. 2008) (citation omitted).

Our Supreme Court has stated, "Common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *In re T.S.M.*, 71 A.3d at 268. Moreover, the Court directed that, in weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *Id*. at 269. The *T.S.M.* Court observed, "[c]hildren are young for a scant number of years, and we have an

obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id*.

On appeal, Mother argues that the court abused its discretion in terminating her parental rights under Section 2511(b) because DHS did not provide expert testimony. Mother asserts that the court erred in accepting the testimony of Ms. Gonzalez, who was not a mental health professional. Mother also asserts that the court abused its discretion in finding Ms. Gonzalez's testimony credible insofar as she equated Mother's role in the Children's lives as a babysitter. Finally, Mother argues that, even if the bond between Mother and the Children is not parental, "that does not indicate irreparable harm won't occur from a complete severing of the relationship." Mother's brief at 12.

Mother's arguments fail. It is well-established that, when evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted). As such, we discern no error or abuse of discretion by the court in weighing Ms. Gonzalez's testimony and finding her credible that the Children, then ages four and six, will not be irreparably harmed if Mother's parental rights are terminated. N.T., 1/19/21, at 46-47.

Ms. Gonzalez reasoned that Mother "is the fun babysitter. She gets to take them . . . to jump around, to have fun, to forget about doing homework. . . ." *Id.* at 47. For instance, she testified that Mother's last two supervised community visits, on October 7 and 14, 2020, occurred at Sky Zone and Chuck E. Cheese. *Id.* at 43-44. Ms. Gonzalez testified that, "when [the Children] are having these visits [it] is just for [Mother] to give them the money to keep playing . . . the games on the arcade. It's not [the Children] spending time with [Mother], per se." *Id.* at 86. She explained that the Children "don't look to her for comfort. They don't look to her to tell them . . . their problems, or just to have good, fruitful conversations. . . ." *Id.* Ms. Gonzalez testified that the Children's parental bond is not with Mother but with their pre-adoptive foster mother, with whom they have resided since January 14, 2019. *Id.* at 45-48, 78. Thus, we discern no abuse of discretion by the court in determining that no parental bond exists between Mother and the Children.

Finally, we reject Mother's contention in the alternative that, even without a parental bond between Mother and the Children, they will be irreparably harmed by the termination of her parental rights. This Court has consistently held that the bond analysis relevant to a child's developmental, physical, and emotional needs and welfare under Section 2511(b) is none other than the parent-child bond. *See In re C.M.S.*, 884 A.2d at 1287 (citation omitted) (The trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of

permanently severing that bond."). Because the record supports the court's finding that there is no parent-child bond between Mother and the Children, we discern no abuse of discretion pursuant to Section 2511(b). *See* N.T., 1/19/21, at 123 (trial court finding, "The testimony was credible that [Mother], when she does visit, is a fun babysitter."). Accordingly, we affirm the decrees involuntarily terminating Mother's parental rights pursuant to Section 2511(a)(2) and (b).

Decrees affirmed. Orders affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/20/2021